UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEFFREY NAYLOR, et al.,

                                      Petitioners,                DECISION AND ORDER

-vs-

                                                                   20-CV-6397 (CJS)

VINCENT VALICENTI, individually and as trustee
of the VINCENT R. VALICENTI REVOCABLE TRUST,

                                      Respondent.

_____

       Petitioners Jeffrey Naylor, Joseph Valicenti, and Valicenti Advisory Services, Inc. ("Petitioners") have applied to this Court for the confirmation of an arbitration award under the Federal Arbitration Act ("FAA"). Mot. to Confirm, Aug. 12, 2020, ECF No. 6 (citing 9 U.S.C. § 9). Respondent Vincent Valicenti, individually and as trustee for the Vincent R. Valicenti Revocable Trust ("Respondent"), opposes the motion on the grounds that the FAA does not apply to this confirmation proceeding, and that the arbitration decision Petitioners seek to confirm is not final and binding. Resp., Sept. 3, 2020, ECF No. 9. The Court has heard oral argument on the motion, and held an evidentiary hearing with respect to the parties' understanding of the arbitration provision at the time the agreement was executed. Min. Entry, Sept. 24, 2020, ECF No. 11; Min. Entry, Nov. 3, 2020, ECF No. 13. For the reasons that follow, Petitioners' motion to confirm [ECF No. 6] is granted.

BACKGROUND[1]

Petitioner Valicenti Advisory Services, Inc. is a New York Corporation with a principal place of business located within this district in Elmira, New York. Appl. at ¶ 1. Petitioners Valicenti and Naylor are individuals domiciled within this district. Appl. at ¶ 2–3. Respondent Vincent Valicenti is an individual domiciled in the state of Florida, and the parties agree that there is complete diversity in this action. Appl. at ¶ 4.

In 2019, the parties retained the Honorable Thomas A. Stander, JSC (Ret.) ("Mediator") to serve as a mediator in matters involving Valicenti Advisory Services, Inc. Ex. A, 15, June 17, 2020, ECF No. 2-1. On September 12, 2020, after a full day of mediation, the parties voluntarily entered into a confidential "Mediated Settlement Agreement." Appl. at ¶ 12; Ex. A at 15–18. In addition to purporting to settle a number of financial issues between the parties, the Mediated Settlement Agreement read, in pertinent part:

> 9. The mediator's fees will be equally divided and paid by the attorneys participating in this mediation. Any disagreement on the contents of any documents required under this agreement or any terms of the agreement shall be mediate[sic]/ arbitrated by the mediator upon request of a party.
>
> 9. [sic] This basic terms of this Agreement, especially the economic terms in paragraphs 2, 3, and 4 are final and binding and is enforceable in any court having jurisdiction.

Ex. A at 17.

---

[1] The following background information has been taken from those elements of Petitioners' original application ("Appl.") and exhibits which were admitted in Respondent's answer. Appl., June 17, 2020, ECF No. 2; Answer, Aug. 3, 2020, ECF No. 4.

Following the mediation, the parties had a series of post-settlement disputes. Appl. at ¶ 15. The mediator unsuccessfully attempted to resolve those disputes. Appl. at ¶ 16. Thereafter, Petitioners requested that the Mediator conduct an arbitration hearing. Respondent denied its obligation to participate in the arbitration and declined to appear at the hearing. Appl. ¶ 21. Regardless, Petitioners went forward with the arbitration hearing, and despite Respondent's refusal to participate, the Mediator provided both parties with a copy of the "Valicenti Arbitration Decision" on or about December 18, 2019. Ex. A at 3. Petitioners now move the Court to confirm the Mediator's arbitration award under the Federal Arbitration Act. Mot. to Confirm, ECF No. 6.

## AGREEMENT TO ARBITRATE

Notwithstanding the strong national policy favoring arbitration evinced by Congress's enactment of the Federal Arbitration Act ("FAA"), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted). Respondent indicates in his papers that his "unwavering position in this matter is that the language of [the arbitration provision in Paragraph 9 of the Mediated Settlement Agreement] is vague and expresses no clear understanding that binding arbitration be employed to resolve the instant dispute." That is, Respondent argues that he never agreed to submit his underlying dispute with Petitioners to binding arbitration.

To determine whether the parties agreed to arbitrate a certain matter, courts should generally apply state-law principles that govern the formation of contracts. *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 48 (2d Cir. 2000) (citing *First Options of*

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The parties agree that New York state law applies in this case.[2] *See, e.g.,* Resp., Sept. 29, 2020, ECF No. 12 (relying upon two cases from the New York Court of Appeals to demonstrate that the arbitration provision was ambiguous).

The agreement to arbitrate must be proved by a preponderance of the evidence. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993). Under New York law, it is well settled that, "[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." *Rightnour v. Tiffany & Co.*, 239 F. Supp.3d 744, 750 (S.D.N.Y. 2017) (quoting *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assoc., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006) (internal quotation marks omitted)). The agreement must not depend upon implication or subtlety. *Waldron v. Goddess*, 461 N.E.2d 273, 274 (N.Y. 1984).

"The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000). An unambiguous agreement "must be enforced according to the plain meaning of its terms." *MHR Capital Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009). However, if the terms are "reasonably susceptible of more than one interpretation" the

---

[2] Even if there were no agreement between the parties on this point, the Court nevertheless finds that New York state law applies. A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941). Under New York's choice-of-law analysis for contract claims, the court evaluates the "center of gravity" or "grouping of contacts", with the purpose of establishing which state has "the most significant relationship to the transaction and the parties." *Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394* (2d Cir. 2001) (citation omitted). In the present case, New York law applies because the "center of gravity" of this transaction was New York: the Mediated Settlement Agreement was negotiated and executed here, the dispute being mediated involved the transfer of a New York business, and all parties have significant commercial ties to the state of New York.

4

contract is ambiguous. *Chimart Assoc. v. Paul*, 489 N.E.2d 231, 233 (N.Y. 1986). While the determination as to whether contract terms are ambiguous is a question of law, "[t]he resolution of an ambiguous provision, for which extrinsic evidence may be used, is for the trier of fact." *Boster–Burton v. Burton*, 940 N.Y.S.2d 111, 113 (N.Y. App. Div. 2012). *See also JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009); *Revson*, 221 F.3d at 66.

At the motion hearing held on September 24, 2020, the Court made an oral ruling finding that the arbitration clause in question is ambiguous. In particular, the primary difficulty in interpreting this clause is discerning the meaning of "mediate/arbitrated" as it relates to disagreements between the parties. The Redbook Manual on Legal Style lends the following insight:

> The slash (also called *virgule*, *solidus*, or *diagonal*) has few uses in formal writing except with dates and fractions. It is best known as the star character in two grammatical abominations: *and/or* and *he/she*. It is especially unfit for legal writing because it is inherently ambiguous: its function may be conjunctive <secretary/treasurer> or disjunctive <a buy/sell decision>.

Bryan A. Garner, *Redbook*: *A Manual on Legal Style*, § 1.80 (2d ed., West 2006). In this case, the parties' use of the slash in "mediate/arbitrated" could be interpreted as either conjunctive or disjunctive. Hence, the parties' unsuccessful attempts to further mediate the post-settlement disputes could be reasonably interpreted alternatively as either requiring arbitration as the next step in the dispute resolution process, or dispensing the parties from any further obligation to attempt to resolve the dispute.

After finding the arbitration clause to be ambiguous, the Court then directed Petitioners to arrange for the Mediator's presence at an evidentiary hearing to testify to his recollection of the parties' intent regarding arbitration. Min. Entry, Sept. 24, 2020, ECF No. 11. The Court also offered both parties the opportunity to introduce any other evidence they believed to be relevant.

The evidentiary hearing was held via video-conference on November 3, 2020. Min. Entry, Nov. 3, 2020, ECF No. 13. Attorney Scott Unger, Esq. appeared with Petitioners Joseph Valicenti and Jeffrey Naylor. *Id.* Attorney Derrick Spatorico, Esq. appeared with Respondent Vincent Valicenti. *Id.* Attorney Unger called the Mediator, Petitioner Joseph Valicenti, and Petitioner Jeffrey Naylor to testify, and they were duly cross-examined by Attorney Spatorico. *Id.* Documentary evidence was received from both parties.

Bearing in mind the legal standards and the evidence discussed above, the Court makes the following findings of fact with respect whether the parties agreed to arbitrate.

1. At the mediation held on September 12, 2019, the parties remained in separate conference rooms, and all communication between the parties was conducted through the parties' respective attorneys, and the Mediator.

2. At the end of an arduous day-long mediation, the Mediator typed up the Mediated Settlement Agreement ("the agreement") on his computer in his office, then shared it with the parties and made several changes based on the parties' continued negotiations.

3. Paragraph 9 of the final form of the agreement included the arbitration clause at issue. That paragraph reads, in pertinent part: "Any disagreement on the contents of any documents required under this agreement or any terms of the agreement

shall be mediate[sic]/arbitrated by the mediator upon request of a party." *See* Appl. (Ex. B), ¶ 9, June 17, 2020, ECF No. 2-2 (received at the evidentiary hearing as Petitioners' Exhibit 1).

4. Once the agreement reached its final form, but prior to execution of the agreement, the Mediator visited both parties separately in their respective conference rooms, read the full agreement to each of the parties, and answered the parties' questions.

5. When the Mediator was reading the agreement in Petitioners' conference room (the "Petitioners' reading"), the individuals present were: Petitioners, Petitioners' counsel, the Mediator, and Respondent's counsel.

6. During the Petitioners' reading, and with Respondent's counsel present, the Petitioners inquired into the meaning of Paragraph 9 of the agreement. The Mediator explained that it meant that if there were further dispute(s) pertaining to the agreement, the parties would attempt to settle the dispute(s) through mediation. Then, if the parties were unable to settle the dispute(s) through mediation, the parties would resolve the dispute(s) through arbitration.[3]

7. Respondent's counsel did not dispute the Mediator's explanation of Paragraph 9 of the agreement during the Petitioners' reading.

8. It was the intent of the parties[4] that Paragraph 9 of the agreement meant that if

---

[3] According to Black's Law Dictionary, the term *arbitration* signifies "[a] dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute." ARBITRATION, *Black's Law Dictionary* (11th ed. 2019).

[4] It is well established that an attorney retained to represent a party in the course of a transaction is that party's agent. *Rai v. WB Imico Lexington Fee, LLC*, 802 F.3d 353, 360 (2d Cir. 2015) (citing *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994)).

any further dispute(s) arose between the parties following execution of the agreement, the parties would first attempt to settle those disputes by mediation, and if mediation was unsuccessful, the dispute would be resolved through arbitration.

In short, the evidence has established the parties' clear, explicit and unequivocal agreement to arbitrate. *See Waldron*, 461 N.E.2d at 274.

## APPLICATION OF THE FAA

The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA covers arbitration agreements that include:

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal . . . .

9 U.S.C. § 2. Here, Respondent argues that the FAA does not apply because the transaction did not involve "commerce."

Transactions in "commerce," as that term is used in the FAA, are not limited to contracts between merchants for interstate shipment of goods. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967). The Supreme Court has found that the phrase "involving commerce" in 9 U.S.C. § 2 is "broader than the often-found words of art "in commerce," and is the functional equivalent of the phrase "affecting commerce," which normally signals Congress's intent to exercise its Commerce Clause powers to the full. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–

8

281 (1995). Indeed, the Supreme Court has found that a contract or transaction is covered by the FAA even where the parties did not contemplate an interstate commerce connection. *Allied-Bruce Terminix Companies, Inc.*, 513 U.S. at 273–281. Courts regularly find a contract covered by the FAA where the parties are located in different states, and did business in multiple states. *See, e.g, Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001) (citing *Prima Paint Corp.,* 388 U.S. at 401).

In the present case, the Court finds that for the purposes of the FAA, the transaction between the parties did involve "commerce." The Petitioners have shown that the transaction underlying the parties' dispute is the sale of a financial services business with clients in multiple states, for which Respondent has performed work in other states, and for which Petitioners have also remitted partial payment to Respondent's residence in Florida. *See esp.* Reply (Ex.), Sept. 16, 2020, ECF No. 10-1. Beyond the parties' interstate activities, it should also be noted that the financial services industry, in general, is heavily regulated by federal law. Consequently, the Court finds that the transaction between the parties involved "commerce," and the arbitration award may be enforced under the FAA.

## CONFIRMATION OF THE AWARD

Once an arbitration award has been issued regarding an agreement that is covered by the FAA, parties seeking to vacate, modify, or correct an award must do so within three months after the award is filed or delivered. 9 U.S.C. § 12. "No exception to this three month limitations period is mentioned in the [FAA] . . . . [and] there is no common law exception . . . ." *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). A party seeking vacatur of an arbitration award "bears the heavy burden of showing that

the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).

On the other hand, "at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award." 9 U.S.C. § 9. Confirmation of an arbitration award under Section 9 of the FAA is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citations omitted). It is well settled in the Second Circuit that a district court's review of an arbitration award under the FAA is extremely deferential. *See Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

Here, Petitioners have presented the Court with a valid arbitration agreement, and an arbitration award issued under that agreement. Appl. (Ex. A), June 17, 2020, ECF No. 2-1; Appl. (Ex. B), June 17, 2020, ECF No. 2-1. Further, the arbitration agreement indicates that the terms of the agreement "are final and binding and is enforceable in any court having jurisdiction." Appl. (Ex. B) at second ¶ 9. As Respondents did not seek to vacate, modify, or correct the arbitration award within three months after the award was filed or delivered pursuant to 9 U.S.C. § 10 and § 11, this Court must confirm the award. 9 U.S.C. § 9.

CONCLUSION

Accordingly, it is hereby ORDERED that Petitioners' motion to confirm the arbitration award [ECF No. 6] is granted.

SO ORDERED.

Dated:   November 6, 2020
         Rochester, New York

*[signature: Charles J. Siragusa]*
CHARLES J. SIRAGUSA
United States District Judge